DUNKLEY REFRIGERATED TRANSPORT, INC., a Utah Corporation, Plaintiff,

v.

UNITED STATES of America and the Interstate Commerce Commission, Defendants,

and

Garrett Freightlines, Inc., Intervenor.

No. C 75–81.

United States District Court, D. Utah, C. D.

April 21, 1976.

---

**816**

Lon Rodney Kump, Salt Lake City, Utah, for plaintiff.

Ramon M. Child, U. S. Atty., Salt Lake City, Utah, D. Utah, for the U. S.

Raymond Michael Ripple, Washington, D. C., for defendant I. C. C.

Maurice H. Greene, Pocatello, Idaho, and Stuart L. Poelman, Salt Lake City, Utah, for intervening defendant Garrett Freightlines, Inc.

Before LEWIS, Chief Circuit Judge, RITTER, Chief District Judge, and ANDERSON, District Judge.

PER CURIAM.

### Background

This is an action instituted by the plaintiff, Dunkley Refrigerated Transport, to obtain judicial review of two orders of the Interstate Commerce Commission [I.C.C.]. The plaintiff filed an application with the I.C.C. on November 10, 1972, seeking a Certificate of Public Convenience and Necessity which would allow the plaintiff to operate as a common carrier over irregular routes transporting foodstuffs in refrigerated vehicles from points in Cache and Salt Lake Counties in Utah to points in Oregon, Washington, and Idaho with the right to tack this authority with existing authority from California to Utah. The I.C.C. handled the application under their modified procedure which calls for evidence to be submitted by shippers supporting the application and protesting carriers in the form of verified statements and does not normally require a hearing. I.C.C. Review Board Number 3 issued an order dated January 24, 1974, in which the plaintiff's application was denied. On February 22, 1974, the plaintiff filed a Petition for Reconsideration and a restrictive amendment to the original petition with the I.C.C. The proposed amendment was designed to restrict the plaintiff from transporting foodstuffs from points in California to points in Oregon and Washington. The intervening defendant, one of the protesting carriers, Garrett Freightlines, Inc., [Garrett] filed a reply to the Petition for Reconsideration on March 15, 1974. On March 26, 1974, the plaintiff filed a motion with the I.C.C. asking that a portion of Garrett's reply be stricken. I.C.C. Division 1, acting as an appellate division, issued an order under the date of July 1, 1974, in which the plaintiff's Petition for Reconsideration was denied, the proposed restrictive amendment was rejected, and the motion to strike was denied. The plaintiff maintains that the I.C.C. "[o]rders are contrary to the evidence in this proceeding, deny plaintiff due process of law, are contrary to law, are based upon misinterpretations both of law and evidence, and are arbitrary and capricious constituting an abuse of administrative discretion." Complaint at 3.

The court is satisfied that the plaintiff has exhausted its administrative remedies

before the I.C.C. and that review by this court of the I.C.C. orders is appropriate. The parties agreed to a review of this matter by the three-judge district court on the modified record. Oral arguments were heard on January 20, 1976, and the court has carefully considered the large volume of filed materials.

### Arguments

The plaintiff's basic argument is that LTL (less than truckload) service is not provided to small shippers by other carriers on the proposed route. The purpose of the plaintiff's proposed restrictive amendment to its application was to eliminate the interests of protestants who were concerned with overhead traffic moving from California to Oregon and Washington. With that amendment the plaintiff feels that Garrett is the only protestant who would have any cause to protest the issuance of the Certificate of Public Convenience and Necessity. The plaintiff feels that the key issue in this case revolves around the lack of LTL service required by the supporting shippers and contends that the I.C.C. never considered that issue. The plaintiff maintains that there is not so much as a "scintilla" of evidence in the record to show that Garrett provides the required LTL service. As such, the plaintiff contends that there is no evidence to support the Commission's denial of the application. Furthermore, the plaintiff claims that the Commission's alleged omission of the LTL issue from either of its orders constitutes a failure to form a rational conclusion supported by adequate findings as is required by the Administrative Procedure Act. 5 U.S.C.A. § 557(c) (1967). The plaintiff maintains that the I.C.C. orders contain no findings and merely consist of conclusionary statements.

The plaintiff argues that the Commission's denial of the application was caused by an erroneous interpretation of the legal standards used in determining that the proposed service was not required by "public convenience and necessity." 49 U.S.C.A. § 307 (1963). The plaintiff contends that the Commission's failure to consider the LTL issue shows that an improper legal standard was applied. The plaintiff seems to feel that the I.C.C. was primarily concerned with protecting firms holding existing certificates and did not adequately consider the public interest in having a competitive market structure and improved performance. *See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974).

The plaintiff submitted, as part of its rebuttal statement, a verified statement of the Traffic Manager of the L.D. Schreiber Cheese Company which set forth specific carrier service failures. The plaintiff contends that the Commission acted in an arbitrary and capricious manner when it rejected the Schreiber statement but refused to strike an objectionable portion of Garrett's reply to the plaintiff's Petition for Reconsideration. The plaintiff maintains that part of Garrett's reply was an improper attempt to introduce unverified new evidence after the record was closed. The plaintiff does not seem to contend that its late filed evidence should have been considered but argues that the Commission acted arbitrarily in excluding the plaintiff's evidence and accepting that of Garrett. The plaintiff claims that the above action shows a lack of consistency and shows that the Commission improperly applied a different standard for similar situations. *See HC&D Moving & Storage Co. v. United States*, 298 F.Supp. 746, 751 (D.Haw.1969).

For convenience, the arguments of all three defendants will be considered together. The defendants' basic contention is that the plaintiff failed to make an adequate evidentiary showing of need to entitle it to the requested Certificate of Public Convenience and Necessity. As such, the defendants maintain that, looking at the record as a whole, including the evidence presented by all of the protesting carriers, there is "substantial evidence" to support the Commission's denial of the plaintiff's application. The defendants point out that seven competing carriers opposed the plaintiff's application basically on the grounds that

they could meet the shippers' needs and that some of the carriers would suffer a diversion of overhead traffic if the application were approved. It is argued that the traffic diversion would occur because of the plaintiff's interline potential through the use of connecting carriers.

The defendants maintain that the evidence proffered by the plaintiff and the ten supporting shippers is so vague and indefinite that it does not conform to the requirements established by the Commission in *John Novak Contract Carrier,* 103 M.C.C. 555, 557 (1967). The government's memorandum points out that eight of the ten supporting shippers listed no specific destinations and five of ten failed to list the volume of traffic they would commit to the proposed service. Those evidentiary elements are required by *Novak.* The government concedes that the supporting shippers desire the proposed service but maintains that the plaintiff must show a need for the service, not just a preference for it. *See Roadway Express, Inc. v. United States,* 213 F.Supp. 868, 878 (D.Del.1963), *aff'd,* 375 U.S. 12, 84 S.Ct. 53, 11 L.Ed.2d 38 (1963).

The defendants point out that the evidence shows there are two irregular route carriers, Ida-Cal Freight Lines and Willis Shaw Frozen Express, Inc., with the authority to provide the LTL services desired by the supporting shippers. Since the shippers' statements do not indicate that they have ever attempted to use those services, the defendants argue that the plaintiff has failed to meet its burden of showing that the proposed service is one that existing carriers cannot or will not perform in a reasonably satisfactory manner. The defendants maintain that the Commission considered the issue and found the plaintiff's evidence to be insufficient to establish the need for the proposed LTL service.

Concerning the alleged arbitrary and capricious action of the Commission in ruling on evidentiary matters, the defendants argue that the Commission's rejection of the plaintiff's late filed shipper statement and the denial of the plaintiff's motion to strike were based on good cause and had a rational basis. The government concedes that the Schreiber statement met the *Novak* requirements but the defendants argue that the statement could not be considered by the Commission because it was new substantive evidence to which the protestants could not respond because it was filed after the record had closed. The defendants contend that the Commission had already been very lenient with the plaintiff in that the Commission had accepted three late filed supporting statements. The evidence was received because the Commission could see no prejudice to the protesting carriers because there was still time for them to file a response. The defendants argue that the I.C.C. acted properly in rejecting the eleventh shipper statement because it was within the Commission's discretion to strictly enforce its time requirements and a response from the protesting carriers was no longer possible. *See, e. g., Buckner Trucking, Inc. v. United States,* 354 F.Supp. 1210, 1219–21 (S.D.Tex.1973). The defendants explain that the material in Garrett's reply brief was acceptable because it was not new evidence—it was merely an explanation of evidence that had already been properly introduced and it was filed in direct response to the plaintiff's contention that: "Garrett Freightlines, Inc. submitted no evidence of l.t.l. service." Dunkley's Restrictive Amendment and Petition for Reconsideration at 6.

In its reply brief, the plaintiff reaffirmed its basic arguments and attempted to answer some of the defendants' contentions. The plaintiff maintains that:

> The record before the Commission shows there are small shippers of foodstuffs, who have been unable to obtain transportation. No motor carrier . . . has stepped forward and placed any evidence of record that they have transported such shipments.

Dunkley's Reply Brief at 6. The plaintiff admits that at least two carriers presently have the authority to provide the proposed service. The plaintiff maintains, however, that the defendants have confused service with authority. The plaintiff claims there

is no evidence that either Ida-Cal Freight Lines or Willis Shaw Frozen Express, Inc., actually performs the service. The plaintiff argues that such evidence would have been provided if the carriers were performing the service. The plaintiff further argues that the supporting shipper statements are incomplete because the shippers presently have no service. The plaintiff does not see how the verified shipper statements can name specific destinations and deficiencies when no service presently exists.

### Legal Standards

■ A court will uphold the decision of an independent governmental agency, such as the I.C.C., if the decision is within the agency's statutory powers and is supported by adequate findings that are based upon "substantial evidence." *E. g., Illinois Central Railroad v. Norfolk & Western Railway,* 385 U.S. 57, 87 S.Ct. 265, 17 L.Ed.2d 162 (1966); *United States v. Pierce Auto Freight Lines,* 327 U.S. 515, 535–36, 66 S.Ct. 687, 90 L.Ed. 821 (1946); *Dunkley Refrigerated Transport, Inc. v. United States,* 253 F.Supp. 891, 892 (D.Utah 1966). "Substantial evidence" is normally defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' . . . '[E]nough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' . . . [T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). The court cannot inquire into the wisdom of the decision. The agency's findings must be accepted if, after looking at the record as a whole, the court finds that they are supported by substantial evidence. *E. g., United States v. Pierce Auto Freight Lines, supra,* 327 U.S. at 535–36, 66 S.Ct. 687. Furthermore, there is a presumption in favor of the validity of I.C.C. orders and the plaintiff bears the burden of showing the invalidity of the order. *I.C.C. v. City of*

Jersey City, 322 U.S. 503, 512–13, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944). If the plaintiff can meet its burden of showing that the Commission's orders are not based on substantial evidence, the court will remand the case to the I.C.C. for a proper determination. *National Freight, Inc. v. United States,* 359 F.Supp. 1153 (D.N.J.1973).

■ In addition to being within the administrative agency's power and based on substantial evidence, an I.C.C. order must also be sufficiently clear and complete so a reviewing court need not guess as to its rationale. *National Trailer Convoy, Inc. v. United States,* 293 F.Supp. 634, 637 (N.D. Okla.1968). This does not mean that the Commission's findings must be complete on every issue. The requirements of the Administrative Procedure Act are met if the order is sufficiently clear and complete to enable the reviewing court to discern with confidence the Commission's conclusions and the underlying reasons. *Alabama Great Southern Railroad v. United States,* 340 U.S. 216, 227–28, 71 S.Ct. 264, 95 L.Ed. 225 (1951). The Supreme Court has declared that:

> While we may not supply a reasoned basis for the agency's action that the agency itself has not given, . . . we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.

*Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., supra,* 419 U.S. at 285–86, 95 S.Ct. at 442. Under this standard, the abbreviated orders issued by the I.C.C. may be sufficient and such orders have been upheld by the courts. *E. g., Carolina Freight Carriers Corp. v. United States,* 307 F.Supp. 723 (W.D.N.C.1969).

■ Before the I.C.C. issues a Certificate of Public Convenience and Necessity, the applicant must show a need for the proposed service:

> [A] certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able

properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied.

49 U.S.C.A. § 307 (1963). If the applicant does not meet the above burden, he has failed to present a prima facie case and his application will be denied. *E. g., Richard Dahn, Inc. v. I.C.C.,* 335 F.Supp. 337 (D.N.J. 1971); *Sloan's Moving & Storage Co. v. United States,* 208 F.Supp. 567, 571 (E.D. Mo.1962), aff'd, 374 U.S. 95, 83 S.Ct. 1687, 10 L.Ed.2d 1026 (1963). Even though one of the purposes of placing the burden on the applicant is "to preserve the motor transportation system from overcompetition" [*American Trucking Associations v. United States,* 344 U.S. 298, 313, 73 S.Ct. 307, 316, 97 L.Ed. 337 (1953)], the Commission should place the interests of the public above the interests or relative economic advantages of the competing carriers. *Central Motor Lines, Inc. v. United States,* 309 F.Supp. 336, 339 (W.D.N.C.1969).

■ As an aid in considering applications from motor carriers, the I.C.C. has defined "public convenience and necessity":

> The question . . . is whether the new operation or service will serve a useful public purpose, responsive to a public demand or need; whether this purpose can and will be served as well by existing lines or carriers; and whether it can be served by applicant . . . without endangering or impairing the operations of existing carriers contrary to the public interest.

*Pan American Bus Lines Operation,* 1 M.C.C. 190, 203 (1936). As can be seen, three main elements are involved in a determination of convenience and necessity: 1) the public need for the proposed service; 2) the adequacy of existing service; and 3) whether the new service will endanger the operations of existing carriers contrary to

the public interest. The Commission has a great deal of discretion in considering carrier applications under the above standards. *I.C.C. v. Parker,* 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945).

The Commission has also specified the evidentiary elements that a carrier should present to make the prima facie showing required before an application will be approved:

> [T]he shippers and consignees supporting an application for the transportation of property are asked to "identify clearly the commodities they ship or receive, the points to or from which their traffic moves, the volume of freight they would tender to applicant, the transportation services now used for moving their traffic, and any deficiencies in existing services." This is the minimum showing expected of any applicant seeking a grant of motor carrier authority.

*John Novak Contract Carrier, supra,* 103 M.C.C. at 557. The requirements of an evidentiary showing similar to that outlined in *Novak* has been approved by the courts. *E. g., Twin City Freight, Inc. v. United States,* 360 F.Supp. 709, 712 (D.Minn.1972); *Richard Dahn, Inc. v. I.C.C., supra.*

### Analysis

■ In applying the parties' arguments to the proper legal standards, it is necessary to consider the relevant language from the Commission's order:

> [T]he evidence submitted in the form of verified statements by the ten supporting shippers, as summarized in Appendix A hereto is insufficient in content to warrant any conclusion that a need for service exists; . . . shippers generally fail to give details on actual or prospective destination points; . . . the general tenor of the shipper support is that applicant would be of great help in the distribution of less-than truckload traffic; . . . without more precise data upon which to make an assessment of need, no rational basis obtains for making any determination herein; . . . given the essentially general and vague

nature of supporting shippers' evidence, we cannot overlook the fact that protestants collectively can provide substantial service; . . . two protestants which fear the diversion of overhead traffic as a result of applicant's interlining potential have submitted appropriate evidence; . . . shippers express in general terms the unavailability of motor carrier service, but none offers specific, representative instances of deficiencies of existing services; . . . although two shippers identify two- or three-line hauls as a transportation problem, neither shipper has convincingly demonstrated that it has attempted to utilize the available service of protestants; . . . although protestants may not be fully authorized to operate in the manner advanced by shippers, nonetheless such situation does not diminish the burden of applicant of establishing a genuine need for service; . . . the paucity of cogent data in this proceeding forces us to conclude that no need for applicant's service has been established; and that the application must be denied in its entirety.

Order, *Dunkley Refrigerated Transport, Inc., Extension—Cache County, Utah,* I.C.C. No. MC–117823; Sub-No. 44, Jan. 24, 1974, at 2. It appéars that the Commission's denial of the plaintiff's application is primarily based on two findings: 1) the plaintiff's evidence was insufficient to warrant a conclusion that there was a need for the proposed LTL service—the Commission found that more precise shipper data was required, that the service was available from protesting carriers, and that the shippers did not show that they had unsuccessfully attempted to utilize the available service; and 2) the protesting carriers can collectively provide substantial service.

After looking at the record as a whole, the court is convinced that the Commission's denial of the plaintiff's application is based on substantial evidence and was within the Commission's statutory authority. The plaintiff has not met its burden of showing to the contrary and has not overcome the presumption of validity of the I.C.C. orders. The above order is based upon rational conclusions, contains adequate findings and is sufficiently clear so that the court does not have to guess as to its rationale. The court can discern with confidence that the Commission simply concluded that the plaintiff had not met its burden to show the public need for the proposed service by showing that existing services were inadequate and that the new service would not improperly endanger existing carrier operations.

Throughout its arguments, the plaintiff attempted to shift the burden to the defendants by arguing that they had not come forward with evidence to show that LTL service was in fact being provided. Clearly, once an applicant presents a prima facie case, the burden can be shifted to the protesting carriers. In this case, however, the plaintiff never presented adequate evidence to shift the burden. The plaintiff erroneously argued that the Commission did not consider the key issue of the availability to the supporting shippers of LTL service. An examination of the Commission's order, however, shows that the Commission found that the evidence did not support the contention that there was a need for additional service of that type. The evidence reveals that carriers had authority to provide the basic proposed LTL service but other than general references there is no evidence from the plaintiff or the supporting shippers showing times, places, persons and responses when the available services were ever requested and denied. As such, the plaintiff has failed to show that carriers with present authority cannot or will not reasonably provide the desired service. The plaintiff argues that there is a difference between authorized and actual service but it fails to show that the authorized service would not be provided if it were requested.

The plaintiff's argument that the evidentiary requirements of the *Novak* case cannot be met because the proposed service is unavailable is equally unconvincing. The plaintiff failed to show the required defi-

ciencies in present service or the need for additional service. The plaintiff failed to show that shippers had a specific need for the transportation of specific LTL shipments from specific origins to specific destinations. While the supporting shipper statements need not and probably cannot be perfect, it is reasonable for the I.C.C. to require them to be more complete and specific than the supporting statements were in this case.

After its application was denied, the plaintiff filed a proposed restrictive amendment to the application with the I.C.C. and requested that its application be reconsidered. The Commission denied the plaintiff's Petition for Reconsideration and rejected the proposed amendment:

> *It is further ordered,* That the petition in (1) above and the proposed amendment be, and they are hereby, denied and rejected, respectively, for the reasons (a) that the findings of Review Board Number 3 are in accordance with the evidence and applicable law, (b) that amendment of the application and reconsideration in light thereof would not warrant a result different from that reached by the Review Board, and (c) that no sufficient or proper cause appears for amending the application or for reopening the proceeding for reconsideration or for granting any of the relief sought.

Order, *Dunkley Refrigerated Transport, Inc., Extension—Cache County, Utah,* I.C.C. No. MC–117823; Sub-No. 44, July 1, 1974, at 1–2. The proposed amendment was not itself new evidence and it did not cure the fatal deficiencies of the original application. The Petition for Reconsideration was really an administrative appeal within the I.C.C. Acting as an appellate body, I.C.C. Division 1 upheld the determination of the hearing body, I.C.C. Review Board Number 3, on much the same basis as is being used by this court: "[T]he findings of Review Board Number 3 are in accordance with the evidence and applicable law." *Id.* In essence, the appellate body adopted the order issued by the Review Board.

The plaintiff's final contention is that the Commission's determination must be reversed and the case remanded because the Commission acted arbitrarily and capriciously in rejecting the late filed supporting statement from the L. D. Schreiber Cheese Company while overruling the plaintiff's motion to strike part of Garrett's reply to the plaintiff's Petition for Reconsideration. The Commission concluded that the Schreiber statement could not be considered because it was late filed new evidence. That determination appears to be correct and the plaintiff does not challenge it. The I.C.C. appellate body accepted Garrett's reply, over the plaintiff's objection, because it concerned "matters which are of record in this proceeding and therefore are entitled to consideration on their merits." *Id.* at 1.

Before reversing a decision of the I.C.C., the court should be convinced that the Commission committed error and that the error substantially prejudiced the losing party. *United States v. Pierce Auto Freight Lines, supra,* 327 U.S. at 528, 530, 66 S.Ct. 687. In this case, it is not even necessary to determine whether the Commission committed error in denying the plaintiff's motion to strike part of Garrett's reply. If the Commission did commit error, the mistake did not prejudice the plaintiff. The hearing body had already denied the plaintiff's application before Garrett's reply to the plaintiff's Petition for Reconsideration was received. The plaintiff failed to obtain the desired Certificate of Public Convenience and Necessity because of its failure to present a prima facie case and not because the Commission improperly received the Garrett reply statement. Furthermore, it appears that the Commission had a rational basis for making its decision concerning the proffered evidence.

It is the conclusion of this court that the Commission's orders must be affirmed.